Homer Charles **WINKLES**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 67882.

Court of Criminal Appeals of Texas,
Panel No. 2.

Sept. 30, 1981.

On Rehearing En Banc April 7, 1982.

Ed Paynter, Abilene, for appellant.

Patricia A. Elliott, Dist. Atty. and Randy E. Dale, Asst. Dist. Atty., Abilene, Robert Huttash, State's Atty., Austin, for the State.

Before ODOM, CLINTON and TEAGUE, JJ.

## OPINION

TEAGUE, Judge.

This is an appeal from a conviction for felony possession of marihuana. After a hearing was held on appellant's motion to suppress evidence, which was overruled, the appellant entered a plea of nolo contendere and was found guilty by the trial judge, who assessed his punishment at three years' imprisonment, together with a $250 fine, all of which was ordered probated.

The appellant challenges the validity of the search warrant that was used to obtain

the evidence that caused him to be convicted of the alleged offense.[1]

At the pre-trial hearing on appellant's motion to suppress, Abilene police officer Terry Odom, the affiant in the search warrant, testified that at a late hour on August 19, 1980, or during the early morning hours of August 20, 1980, he had occasion to come in contact with the appellant when he, with other police officers, went to appellant's apartment, located at 1000 South Clack, apartment number 613, in the City of Abilene, to execute a search warrant for the controlled substance methamphetamine. He had obtained the search warrant on August 19, 1980, at 11:16 o'clock p.m. Appellant, with seven other persons, was arrested at the focal point of the search warrant. The record reflects that the other seven persons were not indicted because the controlled substance, methamphetamine, was not found on the premises. Only marihuana was recovered from the location. However, excluding one person who was a juvenile, the other six persons were charged "with Class B possession of marihuana. There was some that had it on their person and some out in plain sight 'that we [the police] charged them with." The above is a summary of all of the evidence presented at the pre-trial hearing. After oral arguments were heard, the trial judge overruled the appellant's motion to suppress.

Several days later, appellant reappeared in court and entered a plea of nolo contendere to the accusation. The State put on another Abilene police officer, John Vedro, who testified he was one of the participants in the execution of the search warrant, that based upon his training he could identify the plant substance of marihuana, and that he and other police officers seized 11.93 ounces of loose marihuana and marihuana seeds from the residence. He also testified that the residence was either in the possession of or was owned by the appellant.

Appellant attacks the sufficiency of the search warrant on the ground that the affidavit does not reflect adequate probable cause. He argues this affidavit does not detail sufficient underlying circumstances upon which the affiant based his belief that methamphetamine was at the location. He claims the affidavit does not substantiate the credibility of reliability of the unnamed source,[2] as required by the "two prong test" of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).[3]

---

1. After a careful review of the record, we find that the appellant has successfully preserved for appeal purposes the issue presented herein. See Art. 44.02, V.A.C.C.P. In *Galitz v. State*, 617 S.W.2d 949 (Tex.Cr.App.1981, opinion on appellant's motion for rehearing), we held: "Thus the statute presently in effect places a burden on one who would appeal from a negotiated plea proceeding before the court to make manifest upon the record the following requisites in order to *invoke the jurisdiction* of this Court under the proviso: (1) existence of a plea bargaining agreement with the State; (2) punishment assessed by the trial court at or within that recommended by the prosecutor and agreed to personally by the defendant; (3) the basis of the appellate ground of error has been presented in writing, pretrial, to the trial court for consideration . . ."

2. Based on the fact that all of the information presented to the magistrate came from the affiant's source, we hereinafter use the word "source," rather than the word "informant."

3. The pertinent part of the affidavit reads as follows:

MY BELIEF OF THE AFORESAID STATEMENT IS BASED ON THE FOLLOWING FACTS:
Prior to making application for this search warrant your affiant has received information from a confidential informant whose name must remain anonymous for security reasons. This same confidential informant is reliable, credible, and trustworthy, and this belief is based on the following set of facts:
1. That this confidential informant has never been convicted of a felony offense in the State of Texas and has no record with the Texas Department of Public Safety to the best of your affiant's knowledge.
2. This confidential informant is gainfully employed in a lawful occupation and enjoys a good reputation in the community for being an honest individual.
3. This same confidential informant has admitted to your affiant past involvement with marijuana.
4. The confidential informant knows what marijuana looks and smells like and can identify in it's various forms.
5. That your affiant has known this confidential informant for approximately a month. That during this one month period of time

In determining the sufficiency of the affidavit, we are bound by the four corners of that document. See *Gaston v. State*, 440 S.W.2d 297 (Tex.Cr.App.1969), cert. denied, 396 U.S. 969, 90 S.Ct. 452, 24 L.Ed.2d 435 (1979). Cf. *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); and *Ramsey v. State*, 579 S.W.2d 920 (Tex. Cr.App.1979). The latter cases are not applicable to this cause as the issue of whether a false statement was made in the affidavit was neither raised nor presented in the trial court nor to this Court on appeal.

In *Aguilar*, supra, the Supreme Court held that an affidavit for a search warrant may be based upon hearsay information and need not reflect the direct personal observations of the affiant. However, if based upon hearsay, the issuing magistrate must (1) be informed of the underlying circumstances from which it can be determined that the affiant received his information in a "reliable" way, and the magistrate must also (2) be informed of specific factual allegations from which the affiant concluded that the source was "credible" or his information "reliable." Absent such factual allegations, there is not a sufficient basis for a neutral magistrate to make an impartial determination that probable cause exists. The above two requirements are commonly known as the "two prong test" of *Aguilar*, supra.

The "two prong test" of *Aguilar* is to ensure that the issuing magistrate is presented with sufficient facts from which he can make an independent determination that probable cause exists to believe that a criminal offense has been or is being committed and that a search of the named premises will likely reveal evidence of that offense. See Art. 18.01, V.A.C.C.P. However, this Court, as it stated in *Powell v.*

*State*, 505 S.W.2d 585 (Tex.Cr.App.1974), has said many times in the past that:

In interpreting affidavits for search warrants, magistrates and courts must do so in a common sense and realistic fashion. The drafters are usually non-lawyers and their work is usually done in haste of criminal investigations and 'Technical requirements of elaborate specificity once enacted under common law pleadings have no proper place in this area.' *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). See *Frazier v. State*, Tex.Cr.App., 480 S.W.2d 375, and *Cummins v. State*, Tex.Cr.App., 478 S.W.2d 452.

In order to ensure the impartial determination of probable cause, when the police request a search warrant, the issuing magistrate must have before him specific and articulable facts sufficient to support a finding of probable cause. The term "probable cause" means a basis upon which a man of reasonable caution has the belief that the action sought or taken is appropriate. See *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The standard is not what a police officer trained in a particular field would conclude, but rather what a reasonable, prudent man would conclude from the facts presented. *United States v. 1964 Ford Thunderbird*, 445 F.2d 1064 (3d Cir. 1971). The reasons given must "be possible to explain and to justify the arrest to an objective third party." Model Code of Pre-Arraignment Procedure 14 (Proposed Official Draft 1975).

A search warrant may issue in this State to search for and seize any of the items listed in Art. 18.02, V.A.C.C.P. The warrant may not issue unless sufficient facts are first presented which satisfy the issuing

this same confidential informant has given information in reference to narcotic dealers and users to your affiant on numerous occasions and this information has always proven to be true and correct.

6. This same confidential informant has admitted prior use of marijuana in the past, but to your affiant's knowledge does not smoke marijuana now and does not condone the use of chemical drugs.

Within the last thirty-six hours this confidential informant has personally been in the living room of the above described suspected place, at which time the confidential informant did observe a quantity of white powder substance, that the suspected party claimed to be Speed, which is a common street word for Methamphetamine.

magistrate that probable cause in fact exists for its issuance. Arts. 18.01(b), 1.06, V.A.C.C.P.; Art. I, Sec. 9, Texas Constitution. The "Probable Cause," that is used to obtain a search warrant, may be predicated upon three broad categories of information, to-wit:

1. The direct personal observation of the affiant who is applying for the warrant; or
2. Hearsay information furnished to the affiant shown to be credible, or
3. Hearsay information furnished to the affiant shown to be reliable.

that a crime has been committed or is being committed by a person at a certain location. Art. 18.04, V.A.C.C.P. See *Rangel v. State*, 435 S.W.2d 143, 144 (Tex.Cr.App.1969); *Aguilar*, supra.

Because these broad categories are many times insufficient, standing alone, to establish "probable cause," sub classes, which are not limited to the following, have evolved.

1. A combination of direct observation by the affiant *and* hearsay information;
2. A combination of hearsay information *and* personal information furnished to the affiant by a "credible" source; or
3. A combination of hearsay information *and* personal information furnished to the affiant by a "reliable" source.

*Aguilar*, supra, demands that if information furnished to the magistrate by the affiant emanates from a source or an informant of the affiant, then sufficient underlying facts must be stated in the affidavit to show that the affiant's conclusion that a violation of the law was occurring is sustained; i.e., (1) that the informant or source had a valid basis for the belief that a crime was being committed or had been committed and evidence of the criminal act could be seized at a certain location, and (2) that the affiant had a reason for believing that the informant or source was "credible" and/or the information "reliable."

It is apparent from the affidavit in this cause that Odom was operating and acting pursuant to sub class 2, *supra*, when he sought the search warrant from the magistrate, for there is no evidence in this record of any direct observation by Odom or by any other officer, nor is there any corroboration of what the source told Odom. He was acting solely upon what he was told by his source; i.e., a combination of hearsay and personal information from his source, to-wit:

\*   \*   \*   \*   \*   \*

Within the last thirty-six hours this confidential informant has personally been in the living room of the above described suspected place, at which time the confidential informant did observe a quantity of white powder substance, that the suspected party claimed to be Speed, which is a common street word for Methamphetamine.

\*   \*   \*   \*   \*   \*

We are thus confronted at the outset with the question whether this affidavit meets the two-level hearsay from a source test. "Basis of knowledge may be satisfied when there is more than one level of hearsay, as when a participant in crime incriminates himself before a [source] who then relates this information to a police officer. However, *Aguilar* requires that at each level of hearsay the facts constituting knowledge be set forth in the affidavit." See Ringel, Searches & Seizures and Confessions, (1980 Edition), Vol. I, at page 4–27. Though we acknowledge that appellant made the above statement attributed to him by the source, we find it falls short from being a "declaration against penal interest," as that term is ordinarily used in law. We will shortly explain why, although a close reading of what the source related to Odom and how it does not meet the second level hearsay from a source test should already be obvious to the reader.

We need not concern ourselves with the second prong of *Aguilar*, that is, that the affidavit establish that the source is "credible," for we find that the affidavit sets out sufficient facts to show that the source was "credible;" particularly in the field of marihuana. See *Abercrombie v. State*, 528 S.W.2d 578 (Tex.Cr.App.1975), and cases cited at page 584; *Carmichael v. State*, 607 S.W.2d 536, 538 (Tex.Cr.App.1981).

However, as to *Aguilar's* "first prong," we find that the affidavit in the instant case is impotent, as the facts stated do not furnish sufficient information to the issuing magistrate to establish "probable cause." The first prong of *Aguilar* is met when an affidavit states facts and circumstances from which a reasonable person can conclude that the items to be seized are where the affidavit claims them to be and that the items are of a criminal nature such that the law authorizes their seizure. See, "The Undisclosed Informant and the Fourth Amendment: A Search for Meaningful Standards," 81 Yale L.J. 703, 712–13 (1972).

From even a cursory reading of this affidavit, it should be obvious and apparent that, other than the "credible" source's conclusion that the white powder substance was the equivalent of methamphetamine, all that Odom had when he went before the magistrate was a statement from the source that he had been in the living room of a residence located at 1000 South Clack, apartment number 613; that he had observed a "quantity of white powder substance;" and "that the suspected party [our appellant] claimed [it] to be Speed." Read in a common sense contextual fashion, see *United States v. Ventresca,* supra, we cannot attribute the statement, "which is a common street word for Methamphetamine," to the source *or* appellant. The information from the source that was presented to the magistrate via Odom's affidavit reflects no probable cause for the issuance of a search warrant, for it is conclusory in nature and unsupported by sufficient underlying facts to satisfy the first prong test of *Aguilar,* supra. While a search warrant may properly be issued on the basis of "hearsay information," a substantial basis for crediting the hearsay must be presented. See *Nicol v. State,* 470 S.W.2d 893, 894 (Tex.Cr.App.1971).

Nor does the affidavit show that the source possessed personal knowledge that the "quantity of white powder substance" he observed was methamphetamine. Nor did the source tell Odom that the appellant ever had the actual care, custody or control of the "quantity of white powder substance," that was observed by the source in the living room, other than the ambiguous statement, "the suspected party [appellant] claimed [it] to be Speed." The latter statement is ambiguous because the affidavit does not reflect it to be a statement of fact, made in jest, or just what. Nor is it shown under what circumstances the statement was made. For all we know by this affidavit, "Speed" may be the name of a new laundry detergent,[4] as well as "a common street word for Methamphetamine." We find that, as to appellant and his "activities" inside the residence, nothing more than mere presence in the apartment is reflected by the affidavit.

We also observe that the source's past indicates an "expertise with marihuana," but nothing is said in the affidavit regarding his abilities or capabilities of recognizing or identifying the controlled substance methamphetamine. Though the unnamed source may have been "reliable" to Odom in the past in the field of marihuana, there is nothing in this affidavit to evidence that he is "credible" or "knowledgable" in the realm of the controlled substance methamphetamine.

Though we need not discuss the issue of "staleness," see *Sgro v. United States,* 287 U.S. 206, 53 S.Ct. 138, 77 L.Ed. 260 (1932), because of the result we reach, we also observe that by the affidavit, the source spoke to the affiant "within the last thirty-six hours," before application was made for the search warrant. The time when the source actually spoke to the affiant is not specifically shown in the affidavit, as it was in the affidavit in *Powell,* supra. See also *Heredia v. State,* 468 S.W.2d 833 (Tex.Cr.App.1971). Furthermore, no evidence was

---

4. Interestingly, "Speed" is the name of a cleaning substance manufactured by Edison Chemical Company. The source of this information was received from the Austin Public Library, Austin, Texas, on August 20, 1981, by the writer of this opinion. There is also a wall cleaner named "Speedie," a rug scrubber named "Speed Master," and another cleaning product named "Speed Up."

presented that either appellant or the residence address was ever placed under surveillance by the police. In this regard, we find it interesting to note that although seven other persons were arrested when appellant was, nothing is stated in the affidavit to show what, if any, "activity" was occurring inside the apartment when the source was present. Compare *Powell*, supra. The affidavit also does not show where appellant was situated in the residence when he made the statement that was attributed to him by the source.

The State's sole authority to sustain the affidavit is *Powell v. State*, supra, which it claims "fits this case directly." We disagree.

In *Powell*, the affidavit stated the following facts, related by a source to a police officer, who was the affiant, as to what the source observed inside an apartment.

1. The source told the affiant that Nikki Taylor lived at a certain address.
2. The source told the affiant that Taylor had heroin in her possession for the purpose of sale and use.
3. The source told the affiant that 'they' had been inside the apartment and had spoken to the affiant on the same day the affidavit was made.
4. The source told the affiant that while in the apartment, an unknown male had come there and asked Taylor for heroin.
   a. Taylor then went to a back bedroom and shortly returned with a small bundle of small wax paper packages containing a brown powder, which she gave to the unknown male, who gave her money.
   b. Taylor then told the unknown male, 'If you see anyone else who wants to buy some heroin, send them to me.'
5. Taylor showed the source several small wax paper packages containing brown powder, which Taylor told the source was heroin. Taylor put the packages in her purse.
6. After all of the above, Taylor then told the source, 'If you see anyone who wants to buy some heroin, bring them to me.'

The above facts are clearly distinguishable from those of our affidavit. Among other statements of fact missing here, see also *Nicol*, supra, is that the affidavit fails to show that the source possessed personal knowledge what the "quantity of white powder substance" was. Nor do we construe the statement, "that the suspected party [appellant] claimed to be Speed," without more, as being equal to all of those statements found in *Powell*. There is a vast difference between someone "claiming something to be a particular designated item" and "stating as a fact that something is a particular designated item." As previously mentioned, for all this affidavit shows, the "white powder substance" could have been a laundry detergent in a box that was labeled "Speed," for the source did not give the affiant any details concerning the "quantity of white powder substance." Nor, are we told the exact location of the "white powder substance" in the living room, or whether it was loose or in a unique package, or whether or not it had a distinct odor. Nor does the source attribute any unusual physical characteristics, resulting from the use of methamphetamine, to appellant at the time the statement was made. The statement, without more, is innocuous to say the least. The affidavit is insufficient because it is based on hearsay information from the source, without a showing of a substantial basis for crediting the hearsay—it fails to satisfy the second level hearsay test, *supra*.

The fact that a "marihuana source" visits a residence does not, without more, constitute "probable cause" to later search that residence with warrant for the controlled substance methamphetamine. The information that a source secures from a residence must first be shown to be sufficiently "reliable" before a search warrant, predicated thereon, may issue. E.g. *State v. Kuhlman*, 293 So.2d 159 (La.1974).

We again observe that there is no "declaration against penal interest" in the affidavit; not by the source nor by the appellant. Cf. *United States v. Harris*, 403 U.S. 573, 91

S.Ct. 2075, 29 L.Ed.2d 723 (1971). See also *Abercrombie v. State*, supra, at page 584; *Nicol*, supra.

The dissent has failed to grasp what *Aguilar*, supra, means. *Aguilar* mandates that when the affiant's basis for probable cause is an unidentified source or informant of the affiant, then the affidavit must allege and state facts to show that the source or the informant was "credible" or that the information furnished to the affiant was "reliable." Oftentimes, the terms "credible" and "reliable" will have the same meaning; i.e., believability *and* dependability. For example, where the source or informant's "track record" shows both veracity and reliability, as to information concerning, for example, a certain type of controlled substance, then the source will inwardly be both "credible" and "reliable." However, determinations of "credibility" and "reliablity" are analytically distinct. Comparably, "They are analogous to the functions performed by the ultimate trier of fact who must first assess the credibility of a witness [Why do I want to believe this person?], and then the weight to be given to that witness' testimony in determining guilt or innocence [How much dependence will I give his testimony?]." "Establishing Probable Cause From A Paid Or Criminal Informant," Search and Seizure Law Report, Vol. 6, No. 7, July, 1979.

In this affidavit, we are told that, among other things, the source's "track record" reveals much about his knowledge of the drug marihuana, but at no time are we told anything about his "knowledge" of the controlled substance methamphetamine. Thus, the affidavit establishes "credibility," but is insufficient to establish "reliability" of the source's information concerning the controlled substance methamphetamine. In other words, the affidavit does not reflect any fact that when it came to the controlled substance methamphetamine, the source "knew what he was talking about." Cf. *United States v. Polus*, 516 F.2d 1290 (1st Cir. 1975). In its entirety, the ambiguity of the source's information concerning the controlled substance methamphetamine may be a consequence of many things, including simple ignorance, or, indeed, it may be a reflection on his "credibility" and, perforce, the "reliability" of his account of what he saw and observed in the living room of appellant's apartment. *Iness v. State*, 606 S.W.2d 306 (1980) (J. Clinton's dissenting opinion, at page 324).

We do not hold, nor do we mean to imply by our decision, that the source must have had personal knowledge that the substance was in fact methamphetamine, or that he was "credible" and "knowledgable" with regard to the controlled substance methamphetamine before a search warrant could issue. What was said, *and we emphasize this point*, is that the affidavit does not set out any facts which might establish that appellant's declaration to the source, that the white powder substance was "Speed," is any way "reliable." The fact that the source heard the statement made by appellant, standing alone, does not establish the statement's "reliability." *It is this omission that invalidates this affidavit and this search warrant.* The most that can be gleaned from this affidavit is that a credible source saw a white powder substance in an apartment and heard a person, not shown to be "reliable," claim it to be "Speed." Had the appellant's declaration to the source, that the substance was "Speed" been made "reliable," then we would not, as we must, be dealing with speculation and conjecture from the four corners of the affidavit. The lack of any indicia of "reliability" of the declarant [appellant] renders this affidavit insufficient to show a probability that criminal activity was afoot inside the apartment. The second level hearsay test, *supra*, has not been satisfied. The most that can be said for the source's information is that there was *the possibility* of criminal activity inside the apartment, which is insufficient in itself to establish probable cause for the issuance of a search warrant. Thus, contrary to the dissent, we believe we have shown that the information the source obtained from inside the apartment was insufficient to establish "probable cause." "Probable cause" is not established, nor is

the first prong of *Aguilar* satisfied, as the dissent appears to assert in its last paragraph, by a mere recitation that a source or informant has actually been inside a residence, which later becomes the focal point of a search warrant. In short, there is absolutely nothing in this affidavit that corroborates the secondary or second level of hearsay information from the source. The Supreme Court said in *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969): "This is not to say that the tip was so insubstantial that it could not properly have counted in the magistrate's determination. *Rather, it needed some further support.* When we look to the other parts of the application, however, we find nothing alleged which would permit the suspicions engendered by the informant's report to ripen into a judgment that a crime was probably being committed." *Spinelli*, id. (Emphasis added.) Cf. *United States v. Ventresca*, supra; *McCray v. Illinois*, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967).

In sum, the dissent misreads the affidavit, for it is clear that all the affiant had from his source, when he went before the Magistrate for a search warrant, was the following: (1) the source had personally been in the living room of the above described suspected place; and (2) the source observed, while in the living room, a quantity of white powder substance, that the appellant claimed to be "Speed." It would be quixotic indeed to say that the unverified, uncorroborated, and unsubstantiated declaration of appellant, that the quantity of white powder substance was "Speed," furnished probable cause—that there was good reason for believing that a crime was taking place inside the apartment of the appellant and there was "probable cause" for the issuance of a valid search warrant. The source may have been an honest person in the past to the affiant, but this alone does not establish a basis for the conclusion that the controlled substance methamphetamine was in the apartment. There are no other allegations in the affidavit which might otherwise establish the "reliability" of the source's identification of the substance he saw to be the controlled substance methamphetamine, which omission renders the affidavit insufficient to establish probable cause for the issuance of the search warrant.

In *Powell*, the statement concerning the substance which was made to the source by the declarant was shown to be "reliable" by two separate factors: (1) the statement was corroborated by the sale of the packages to an unknown stranger combined with the statement made to that buyer, and (2) the statement was a declaration against penal interest in that the affidavit alleged that the maker of the statement was in possession of the powder which she claimed was heroin, and which was located in her apartment. Neither of these factors of "reliability" was included in the affidavits of either *Nicol* or this cause. Had appellant's claim, that the substance was "Speed" been made "reliable" by somehow showing he was in possession of the controlled substance methamphetamine, when the claim was made, thereby making the statement a declaration against penal interest, Cf. *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), see also, *Abercrombie v. State*, supra, at 584; *Nicol*, supra, or by showing other facts corroborating, verifying, or substantiating the statement, or by establishing the credibility of the declarant as to the controlled substance methamphetamine, then this affidavit might be sufficient. However, the lack of any indicia of "reliability" as to the claim that the controlled substance was methamphetamine renders the affidavit insufficient to show a probability that criminal activity was afoot inside the apartment. The mere possibility that such was occurring is insufficient to warrant an intrusion into a person's domicile, and the warrant in this cause, authorizing such intrusion, unconstitutionally issued.

In sum, this affidavit advances a mere conclusion of the source that the appellant possessed the controlled substance methamphetamine, without the affiant setting forth sufficient underlying facts in the affidavit from which a neutral magistrate

could draw his independent conclusion as to credibility of the source and a reliable factual basis upon which the source's assertions rested. Moreover, in the top portion of the affidavit there is no affirmative allegation that the source spoke with personal knowledge of the facts alleged. Hence, it is entirely possible and reasonable that the source had reached his conclusion on the basis of mere suspicion or belief. The mere assertion that the source speaks from personal knowledge, which we do not find here, without factual data to sustain the assertion, will not be sufficient to establish probable cause for the issuance of a search warrant. See *United States v. Long*, 439 F.2d 628 (D.C.C.A.1971). Here, the basis of the source's conclusion that the white powder substance was methamphetamine and was inside the residence was by personal observation. *However, even where probable cause is predicated upon personal observation, it must be clear that the source actually viewed the crime or evidence of crime.* Compare *United States v. Cleckler*, 578 F.2d 1055 (5th Cir. 1978). Otherwise, all the magistrate is presented with is a "conclusion of the source," and this will not support an independent determination of probable cause by the magistrate. *Carmichael v. State*, supra.

The affidavit in the instant case supplies neither sufficient information as to the "reliability" of the source's information nor sufficient description of the appellant's activities inside the residence to satisfy *Aguilar*, supra. We conclude the affidavit is insufficient. See *Nicol*, supra, and the cases cited at page 895.

For reasons stated, the judgment is reversed and the cause remanded.

CLINTON, J., concurs.

ODOM, Judge, dissenting.

In response to appellant's challenge to the sufficiency of the affidavit supporting the search warrant, I would overrule the ground of error because the facts submitted to the magistrate were sufficient to justify a conclusion that methamphetamine was probably on the premises at the time the warrant was issued.

In *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the United States Supreme Court established a two-part requirement for affidavits founded upon hearsay information: (1) underlying circumstances from which the informant concluded that the narcotics were probably where he claimed them to be, and (2) underlying circumstances from which the officer concluded that the informant was credible or his information reliable. 378 U.S. at 114, 84 S.Ct. at 1514. Here, the majority opinion bases a reversal on a hypertechnical finding that the first element of *Aguilar* has not been met. Specifically, the opinion emphasizes that the affidavit failed to specify that the informant had personal knowledge that the substance observed was in fact methamphetamine and that he was "credible" and "knowledgable" with regard to that particular drug.

The failure of the affidavit to allege such expertise and certainty on the part of the informant is not fatal. The magistrate was provided with sufficient facts and circumstances to support the issuance of the search warrant because "... only the probability, and not a prima facie showing of criminal activity is the standard of probable cause." *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637; *Lopez v. State*, 535 S.W.2d 634 (Tex.Cr.App.). By holding that the affidavit is insufficient for failure of the informant to personally insure that the substance was in fact methamphetamine and not "laundry detergent" the majority is proposing that a chemical analysis be conducted by an informant as a prerequisite to the issuance of a search warrant. Certainly, the magistrate need not be provided with the very evidence that the execution of the warrant may indeed reveal. Likewise, the affiant is not shouldered with the identical burden that is necessary at trial to sustain a conviction. The validity of a search warrant does not depend on establishing guilt beyond a reasonable doubt or by preponderance of the evidence. *United States v. Harris*, 403 U.S.

573, 91 S.Ct. 2075, 29 L.Ed.2d 723; *Dishman v. State*, 460 S.W.2d 855 (Tenn.1970).

The majority opinion mistakenly concludes that the affidavit is based on a "mere conclusion of the source that the appellant possessed methamphetamine." A reading of the specific language in the affidavit supports a contrary finding. Instead of relating a personal conclusion regarding the specific type of narcotic observed, the informant provided the affiant with a description of the substance as well as a claim by the appellant himself that the powder was "speed." These factual observations are not the "conclusions" which are fatal to an affidavit in support of a search warrant. Instructive on this point is *Powers v. State*, 456 S.W.2d 97, (Tex.Cr.App.) where the informant merely stated that there was marihuana at a certain location. The affidavit, in contrast to the one presently before the court, failed to provide the magistrate with the circumstances from which the informant concluded that the narcotics were where he claimed them to be. Further, I respectfully disagree with the conclusion of the majority that the source may have based his information on "mere suspicion or belief" in light of the clear recitation in the affidavit that the facts contained therein were based on the personal observation of the informant in the living room of the premises searched. This Court has consistently recognized that personal observation by an affiant's source is sufficient to satisfy the first element of *Aguilar*. See *Carmichael v. State*, 607 S.W.2d 536, 539 n. 1; *Lopez v. State*, 535 S.W.2d 643; *Carvajal v. State*, 529 S.W.2d 517 (Tex.Cr.App.); *Collins v. State*, 502 S.W.2d 743 (Tex.Cr.App.); *Hilson v. State*, 475 S.W.2d 788 (Tex.Cr. App.).

The majority attempts to support the invalidity of the affidavit by pointing out that the informant's factual observations fail to establish a "nexus" between the appellant and the substance he claimed was "speed." There is no such requirement. In fact, the issuance of the search warrant for the *premises* where the substance was observed would have been proper even if appellant's identity or presence at that residence was unknown. *Turner v. State*, 543 S.W.2d 629. Appellant's presence is only significant with regard to identifying the powder as a narcotic because he claimed it was "speed." This claim, when considered with the fact that the informant had given reliable and correct information in reference to narcotics dealers and users in the past, supports a finding by the magistrate that narcotics would probably be located on the premises at the time the warrant was issued. Direct evidence sufficient to sustain a conviction against *appellant* for methamphetamine possession was not a requisite to a finding of probable cause for the issuance of the search warrant of the *premises*. *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142; *Lopez v. State*, 535 S.W.2d 643.

The approach taken by the majority imposes the hypertechnical specificity that was condemned by the Supreme Court in *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684. To properly ascertain whether the search warrant is based on probable cause, the affidavit should be interpreted in a common sense and realistic manner and the magistrate is entitled to draw reasonable inferences from the facts contained therein. *United States v. Ventresca*, supra; *Lopez v. State*, supra. Furthermore, ". . . the resolution of doubtful or marginal cases should be largely determined by the preference to be accorded to warrants." *United States v. Ventresca*, supra. Probable cause exists where the facts submitted to the magistrate are sufficient to justify the conclusion that the property that is the object of the search is probably on the premises to be searched at the time the warrant issues. *Gish v. State*, 606 S.W.2d 883 (Tex.Cr.App.).

The affidavit herein recites the necessary facts and circumstances to support a finding of probable cause and *Powell v. State*, 505 S.W.2d 585, does not require a contrary holding. As the majority notes, the affidavit in *Powell* contained greater specificity than the one presently before the court but *Powell* did not establish the minimum re-

quirements for an affidavit based on hearsay. As we stated in *Powell*, the first element of *Aguilar* was met because the "... recitations in the affidavit in the case at bar stated that the informer had actually been inside the apartment where the appellant and others were arrested ..." *Powell*, supra at 586.

For these reasons I dissent.

Before the court en banc.

## OPINION ON STATE'S MOTION FOR REHEARING

ODOM, Judge.

For the reasons stated in the dissenting opinion on original submission, we hold that the affidavit was sufficient to support issuance of the search warrant.[1] Therefore, we grant the State's motion for rehearing and affirm the judgment.

ROBERTS, Judge, dissenting.

I fear that, in its eagerness to disapprove the approach taken in one of the panel opinions, the court has given this case short shrift. We should begin from scratch rather than by adopting a dissenting opinion. Saying that the panel opinion was wrong will not support the conclusion that the trial court's ruling was right. The court's action on rehearing masks its failure to analyze this case according to well established principles of fourth amendment law. By carefully adhering to these principles I conclude that, although neither of the panel opinions was completely correct, the State's motion for rehearing should be overruled.

This is an appeal from a conviction for felony possession of marihuana. After a hearing was held on the appellant's motion to suppress evidence, which was overruled by the trial court, the appellant entered a plea of nolo contendere.

After the appellant entered his plea, the State called Officer Vedro of the Abilene Police Department as a witness. Vedro testified that pursuant to a search warrant he had entered and searched an apartment occupied by the appellant. During the search Vedro discovered a quantity of marihuana which was later found to weigh more than four ounces.

After hearing this evidence the trial court found the appellant guilty of the offense. In accordance with a plea bargain, punishment assessed was a fine of two hundred fifty dollars and confinement for three years, with the term of imprisonment probated.

The appellant challenges the validity of the search warrant which was used to obtain the evidence against him. He argues that the affidavit filed in support of the search warrant does not set forth sufficient underlying facts and circumstances in support of the affiant's conclusion that methamphetamine would be found on the premises.

The affidavit reads:

THE STATE OF TEXAS )( )( COUNTY OF TAYLOR

I, Terry A. Odom, do solemnly swear that heretofore, on or about the 19th day of August, A.D., 1980, in the Abilene Taylor County, Texas, one known only as Homer, described as a white male, mid-twenties, long brown bushy hair, and person or persons unknown to your affiant, either by name or description, but located on said residence and curtilage (hereinafter referred to as "Suspected Party" for purposes of this affidavit" [sic] did then and there unlawfully possess and does at this time unlawfully possess a substance prohibited by the Controlled Substance Act of the State of Texas, to-wit: METHAMPHETAMINE in a residence, curtilage being described as apartement [sic] number 613 of a multi-apartment complex being constructed of tan stucco with brown trim and having a brown shingle roof. The number 613 being on a brown door entering the suspected residence. (hereinafter [sic] referred to as "Suspected Place" for purposes of this affidavit)

[1] Appellant suggests in a second ground of error that the evidence is insufficient when the fruits of the search are excluded from consideration. His premise having been overruled, the conclusion is likewise without merit.

located at 1000 South Clack, Apartment number 613

Quail Run Apartments TAO

DHL

in Abilene Taylor County, Texas, which said above described "Suspected Place" is possessed, occupied, under the control and charge of the above mentioned "Suspected Party"

MY BELIEF OF THE AFORESAID STATEMENT IS BASED ON THE FOLLOWING FACTS:

Prior to making application for this search warrant your affiant has received information from a confidential informant whose name must remain anonymous for security reasons. This same confidential informant is reliable, credible, and trustworthy, and this belief is based on the following set of facts:

1. That this confidential informant has never been convicted of a felony offense in the State of Texas and has no record with the Texas Department of Public Safety to the best of your affiant's knowledge.

2. This confidential informatn [sic] is gainfully employed in a lawful occupation and enjoys a good reputation in the community for being an honest individual.

3. This same confidential informant has admitted to your affiant past involvement with marihuana.

4. The confidential informant knows what marihuana looks and smells like and can identify in it's [sic] various forms.

5. That your affiant has known this confidential informant for approximately a month. That during this one month period of time this same confidential informant has given information in reference to narcotic dealers and users to your affiant on numerous occasions and this information has always proven to be true and correct.

6. This same confidential informant has admitted prior use of marihuana in the past, but to your affiant's knowledge does not smoke marihuana now and does not condone the use of chemical drugs.

Within the last thirty-six hours this confidential informant has personally been in the living room of the above described suspected place, at which time the confidential informant did observe a quantity of white powder substance, that the suspected party claimed to be Speed, which is a common street word for Methamphetamine.

Wherefore, I ask that a warrant to search for and seize the said controlled substance the above described premises be issued in accordance with the law in such cases Provided [sic]:

/s/ Terry Odom

Sworn to and subscribed before me by Terry Odom on the 19th day of August A.D. 1980.

/s/ Don Lane

MAGISTRATE

Judge Don Lane 42nd District Court

It should be obvious from reading this affidavit, that the affiant did not have personal knowledge of the facts related. Rather, the affiant's belief that methamphetamine would be found at the named location was based on hearsay information provided to him by the unnamed informant.

In *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the United States Supreme Court established what has been called a "two-pronged test"[1] for determining the validity of search warrant affidavits which are based on hearsay information. The Court held:

"Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances

---

1. *Spinelli v. United States,* 393 U.S. 410, 413, 89    S.Ct. 584, 587, 21 L.Ed.2d 637 (1969).

from which the officer concluded that the informant, whose identity need not be disclosed, see *Rugendorf v. United States*, 376 U.S. 528, 84 S.Ct. 825 [11 L.Ed.2d 887], was 'credible' or his information 'reliable'. Otherwise, 'the inferences from the facts which lead to the complaint' will be drawn not 'by a neutral and detached magistrate,' as the Constitution requires, but instead, by a police officer 'engaged in the often competitive enterprise of ferreting out crime,' *Giordenello v. United States*, [357 U.S. 480, 486, 78 S.Ct. 1245, 1250, 2 L.Ed.2d 1503]; *Johnson v. United States*, [333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436], or, as in this case, by an unidentified informant."

378 U.S. at 114–115, 84 S.Ct. at 1514.

Under the *Aguilar* test the search warrant affidavit must set forth specific facts from which a neutral and detached magistrate can reasonably conclude (1) that the informant had a basis for his allegation that evidence of crime would be found at a certain location (the "basis of knowledge" prong)[2] and (2) that the informant's information is reliable (the "veracity" prong).[3] Both prongs of this test must be satisfied.

I turn now to an examination of the affidavit in this case. The first part of the affidavit contains an allegation by the affiant that an individual "known only as Homer" and other persons unknown to the affiant possessed the controlled substance methamphetamine in a described place "possessed, occupied, under the control and charge of the above mentioned 'Suspected Party'" (presumably "Homer"). Nowhere in the affidavit are there any facts set out which would support the affiant's allegation that "Homer" or any of the other unknown persons possessed, occupied or controlled the described premises. Without such facts, this allegation should not be considered in determining whether probable cause existed to search the premises.

The second part of the affidavit sets forth the basis for the affiant's allegation.

In the first through sixth numbered paragraphs the affiant sets forth his reasons for believing that his "confidential informant" is "reliable, credible, and trustworthy." These six paragraphs are sufficient to satisfy the second or "veracity" prong of *Aguilar* with respect to the confidential informant.

Following the sixth numbered paragraph of the affidavit the affiant sets out the facts which explain the informant's "basis of knowledge":

"Within the last thirty-six hours this confidential informant has personally been in the living room of the above described suspected place, at which time the confidential informant did observe a quantity of white powder substance, that the suspected party claimed to the Speed, which is a common street word for Methamphetamine."

This paragraph contains the personal observations of the informant (the viewing of a "white powder substance" in the living room of the described place within the last thirty-six hours), a hearsay statement by the "suspected party" (a claim that the substance was "Speed"), and an unattributed assertion (that "Speed" is a "common street word for Methamphetamine"). I shall analyze each of these parts in turn to see whether they satisfy the requirements of *Aguilar*.

As noted above, the first six numbered paragraphs of this affidavit adequately show reasons for crediting the information supplied by the informant. In addition, since the affidavit shows that the informant personally observed the "white powder substance" in the living room of the described place within the last thirty-six hours, the first or "basis of knowledge" prong of *Aguilar* is satisfied with respect to the informant's observations. *See Carmichael v. State*, 607 S.W.2d 536, 539 n. 1 (Tex.Cr.App.1981); *Collins v. State*, 502 S.W.2d 743 (Tex.Cr.App.1973); *Guerra v. State*, 496 S.W.2d 92 (Tex.Cr.App.1973).

2. Moyian, *Hearsay and Probable Cause: An Aguilar and Spinelli Primer*, 25 Mercer L.Rev. 741, 773 (1974).

3. *Id.* at 755.

However, the informant's personal observations do not alone supply probable cause for believing that an offense has been committed or that evidence of crime would be found on the premises. In *Sullivan v. State*, 626 S.W.2d 58 (Tex.Cr.App.1981), this court held that the viewing of a white powder cannot alone support a finding of probable cause to believe that a crime has been committed. However, the court noted that although white powder is "not an object that is inherently dangerous, contraband, or stolen goods", *Id.* at 60, other facts and circumstances or specialized knowledge in combination with the viewing of the powder can support a finding of probable cause.

In the context of a search warrant affidavit based upon information supplied by an informant the possible additional facts and circumstances include

"... previously demonstrated familiarity with drugs by the informant, an admission to the informant by the possessor that the substance observed is what the informant says it is, observed use or treatment of the substance in a manner unique to what the informant says the substance is, obtaining of a part of the substance by the informant for testing and identification by the police officer, or use of a part of the substance by the informant followed by the effects to be expected from what the informant says it is." (footnotes omitted).

W. LaFave, 1 *Search and Seizure* 540–541 (1978). I do not mean to suggest that the above is exhaustive of the possible ways to supply the additional necessary facts and circumstances to justify a finding of probable cause in connection with the viewing of a white powder. It is merely illustrative.

In this affidavit there is no showing of use of the observed substance in any manner. There is no showing that a sample was taken for later testing. There is no showing that the informant observed any effects from the substance. Although the affidavit does allege the informant had some expertise in the identification of marihuana, it contains no assertion that he was familiar with, or could identify, any other controlled substance.

The only additional facts set out in this affidavit are the claim by the "suspected party" that the substance was "speed" and the assertion that "speed" is a common street word for methamphetamine. As I have previously noted, the claim of the substance as "speed" was hearsay to the informant and, therefore, double hearsay to the affiant. I must, therefore, determine whether this affidavit adequately sets forth the facts necessary to show that this claim meets the two-prong *Aguilar* test. At first glance this claim is in the nature of an admission against penal interest. However, this affidavit contains no facts which indicate that the "suspected party" was the possessor of the substance. The informant's information does not show that the "suspected party" had personal possession of the substance. Neither does the informant's information show that the "suspected party" possessed, occupied or controlled the described premises. The mere identification of a substance as a controlled substance cannot be a declaration against penal interest. Without some showing that the declarant possessed the substance this identification remains nothing more than a simple hearsay statement. It has none of the reasons for crediting its truth that traditionally are associated with declarations against penal interest.

In addition, without some facts set forth in the affidavit which support the allegation the "suspected party" possessed the substance himself, or otherwise had reason to know the nature of the substance, there is no basis of knowledge shown for the "suspected party's" claim. Without some showing of a connection between the "suspected party" and the substance, this affidavit fails to show that the identification of the substance was based on anything more than rumor or report.

For these reasons, I would hold that the claim by the "suspected party" that the white powder was "speed" cannot be credited and may not be considered in determining whether this affidavit sufficiently sets

forth probable cause to believe that methamphetamine would be found on the premises.

The only remaining assertion contained in this affidavit is that "speed" is a "common street word for Methamphetamine." Whether I attributed that assertion to the "suspected party", to the informant, or to the affiant, it adds nothing to a finding of probable cause. It only serves to explain the claim that the substance was "speed". Since I have concluded that that claim cannot be credited, the explanation is irrelevant.

In *Powell v. State*, 505 S.W.2d 585 (Tex. Cr.App.1974), this court upheld the validity of a search warrant which was based on a combination of facts personally observed by an informant and hearsay statements by the possessor of a controlled substance. The affidavit in that case read, in part:

"Informer further stated they were at this location inside the apartment when an unknown Negro male came to this apartment and asked Nikki Taylor for some heroin. Nikki Taylor then went into the back bedroom, returned after a short period of time with a small bundle of small wax paper packages containing a brown powder which she gave to the unknown Negro male, and the Negro male gave her an unknown amount of paper money. Nikki Taylor then told the unknown Negro male, 'If you see anyone else who wants to buy some heroin, send them to me.' The informer also stated that before they left the apartment Nikki Taylor showed the informer several small wax paper packages containing brown powder which Nikki Taylor stated was heroin. Nikkie [sic] Taylor then placed these packages in her purse. Nikki Taylor also told the informant, 'If you see anyone who wants to buy some heroin, bring them to me.' "

*Id.* at 586.

The affidavit involved in *Powell* thus contained specific facts which indicated that the person who made the hearsay identification of the substance had personal knowledge of the nature of the substance and had

possession of the substance, thereby making the identification of the substance a declaration against penal interest.

In *Nicol v. State*, 470 S.W.2d 893 (Tex.Cr. App.1971), this court held that a search warrant affidavit based on an informant's information was invalid. That affidavit read, in part:

" ... That the informant had seen BRUCE LEGER, of Apartment B, 1704 N. Azalea Street, and CHARLES NICOL, possess what he was told [sic] marijuana. Informant stated that the marijuana is wrapped in red cellophane packages, the approximate size of a brick."

*Id.* at 894.

The warrant in *Nicol* was held to be invalid because "the affidavit shows neither that the informant possessed personal knowledge of the contents of these packages nor that the informant's source was reliable." *Ibid.*

In the case now before us, we have an affidavit which falls somewhere between the extremes contained in *Powell* and *Nicol.* Like *Powell*, this affidavit shows that the informant personally observed the substance. But, like *Nicol*, the identification of the substance as a controlled substance depends upon the hearsay statement to the informant by a person not shown to be credible. Furthermore, like *Nicol*, this affidavit does not set out the facts which would show the basis for the hearsay identification. Absent additional facts set forth in the affidavit, such as those contained in *Powell*, the hearsay statement to the informant should not be considered in determining whether probable cause existed for the issuance of this warrant.

I would not hold that a search warrant such as this one must contain facts to support a connection between a person and a controlled substance. Of course, a search warrant can be issued for a search of a named place where contraband or evidence of a crime has been observed. *Turner v. State*, 543 S.W.2d 629 (Tex.Cr.App.1976). The connection between the "suspected party" here and the "white powder substance"

observed by the informant is significant because the identity of the substance was established only by the claim by the "suspected party". Without the facts set forth in the affidavit which would support such a connection, this affidavit fails to demonstrate that the "suspected party" had any basis for his claim and fails to demonstrate that the "suspected party" is either credible or that the claim is reliable. It, therefore, fails to meet either prong of the *Aguilar* test.

Since the claim by the "suspected party" was necessary to a finding of probable cause for the issuance of this search warrant, and since the testimony admitted against the appellant at trial was the fruit of what I have concluded was an unlawful search and seizure, I would overrule the State's motion for rehearing, and reverse and remand this case for a new trial.

I dissent.

CLINTON and TEAGUE, JJ., join in this opinion.