# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

444444444444444444
**ON REMAND**
444444444444444444

**444444444444444**
**NO. 03-01-00625-CR**
**444444444444444**

**David Daniel Lauer, Appellant**

**v.**

**The State of Texas, Appellee**

**44444444444444444444444444444444444444444444444444444444444444444**
**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT**
**NO. 9014067, HONORABLE BOB PERKINS, JUDGE PRESIDING**
**44444444444444444444444444444444444444444444444444444444444444444**

## M E M O R A N D U M   O P I N I O N

This court affirmed the trial court's judgment of appellant's conviction for the offense of capital murder. The court of criminal appeals granted appellant's petition for discretionary review. That court remanded the cause for our reconsideration of appellant's point of error challenging the trial court's ruling on the validity of the search warrant. Appellant's remaining grounds for review were refused.

Appellant urges that the trial judge erred in overruling his motion to suppress the evidence from the search of his vehicle. More specifically, appellant contends that the affidavit

presented to the magistrate did not establish probable cause to believe either that an offense occurred or that relevant evidence would be obtained.

**Law Applicable**

Statutes based on and reflecting constitutional requirements provide that:

> No search warrant shall issue for any purpose in this state unless sufficient facts are first presented to satisfy the issuing magistrate that probable cause does in fact exist for its issuance. A sworn affidavit setting forth substantial facts establishing probable cause shall be filed in every instance in which a search warrant is requested . . . .

Tex. Code Crim. Proc. Ann. art. 18.01(b) (West Supp. 2004). Article 18.02 of the Texas Code of Criminal Procedure in pertinent part provides that a search warrant may be issued to search for and seize property acquired by theft or in any other manner which makes its acquisition a penal offense; property specifically designed, made, or adapted for or commonly used in the commission of an offense; implements or instruments used in the commission of a crime; property or items, except the personal writings by the accused, constituting evidence tending to show that a particular person committed an offense. Tex. Code Crim. Proc. Ann. art. 18.02(1), (2), (9), (10), (11) (West Supp. 2004).

In pertinent part, Article 18.01(c) provides:

> A search warrant may not be issued pursuant to subdivision (10) of Article 18.02 of this code unless the sworn affidavit required by subsection (b) of this article sets forth sufficient facts to establish probable cause: (1) that a specific offense has been committed, (2) that the specifically described property or items that are to be searched for or seized constitute evidence of that offense or evidence that a particular person committed that offense, and (3) that the property or items constituting

2

evidence to be searched for or seized are located at or on the particular person, place, or thing to be searched.

Tex. Code Crim. Proc. Ann. art. 18.01(c) (West Supp. 2004).

**Standard of Review**

An appellate court reviews a trial court's ruling on a motion to suppress under a bifurcated standard of review by giving almost total deference to a trial court's determination of historical facts and reviewing de novo the court's application of the law of search and seizure. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *State v. Duncan*, 72 S.W.3d 803, 805 (Tex. App.—Fort Worth 2002, pet. dism'd, untimely filed). Whether the facts alleged in a probable cause affidavit sufficiently support a search warrant is determined by examining the totality of circumstances. *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983); *Ramos v. State*, 934 S.W.2d 358, 362-63 (Tex. Crim. App. 1996). The magistrate is permitted to draw reasonable inferences from the facts and circumstances alleged. *Ramos*, 934 S.W.2d at 362-63. Reviewing courts should accord great deference to the magistrate's determination. *Ramos*, 934 S.W.2d at 363. Appellate review of the trial court's probable cause determination is a de novo review, applying the same standard as the trial court, and the appellate court is required, as was the trial court, to give the magistrate's decision to issue the warrant great deference. *Duncan*, 72 S.W.3d at 806.

In determining the sufficiency of an affidavit for a search warrant, a reviewing court is limited to the four corners of an affidavit. *Lagrone v. State*, 742 S.W.2d 659, 661 (Tex. Crim. App. 1987); *Mayfield v. State*, 800 S.W.2d 932, 934 (Tex. App.—San Antonio 1990). The affidavit must be read in a common sense and realistic manner, and reasonable inferences may be drawn from

3

the facts and circumstances contained in its four corners. *Gates*, 462 U.S. at 230-31; *Lopez v. State*, 535 S.W.2d 643, 647 (Tex. Crim. App. 1976). If, in a particular case, it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants. *United States v. Ventresca*, 380 U.S. 102, 109 (1965); *Lopez*, 535 S.W.2d at 647.

## This Affidavit

In the affidavit furnished to support the issuance of the search warrant in this case, the affiant alleged appellant had abducted and kidnapped Helen Frost. Affiant further alleged that a specifically described pickup truck that was owned by another person but in control of appellant was located on a parking lot at the Hyatt Regency Hotel at 208 Barton Springs Road in Austin, Travis County, Texas. Also, it was alleged that evidence showing appellant had committed the offense alleged was kept and concealed in the pickup truck. The alleged evidence enumerated was blood, hair, fiber, bodily fluids, including, but not limited to, seminal fluid, vaginal secretions, and saliva; fingerprints, the body of Helen Frost, or any part thereof, shoe prints, foot prints, sexual devices, condoms, restraints, female clothing, including, but not limited to, bras, underwear, shorts, shirts, shoes, beige and black thong-type sandals, jewelry, eyeglasses, and hairclips.

The State has accurately summarized substantially as follows the facts and circumstances stated by the affiant to show probable cause. On October 7, 1999, Helen Frost's father, James Frost, reported that Helen, 21 years old, had been missing for two days and had never been gone that long without contacting her parents. Sean Hackett, Helen's boyfriend, told police he had last spoken to Helen on October 6, 1999, at 8:30 a.m., at which time she had told him she was

4

going to work. She worked for a person named David. Helen Frost told Sean Hackett to call her back at 3:00 p.m. that day to make arrangements for that evening. He called her work and home phone numbers but was unable to reach her. Sean Hackett had not seen or spoken to Helen Frost since.

On October 8, 1999, Ana Roe, a friend of Helen Frost's, found Helen's car at 2025 W. Ben White in a grocery store parking lot. Upon investigation, police found the car locked with Helen Frost's purse inside. It did not appear to be tampered with; her identification and bank debit card were still in the purse. The police did not find the car keys either outside or inside the car. The police determined that the car was functioning properly.

On October 8, 1999, upon a consent search of appellant's house and storage shed, police found what appeared to be drops of blood on a pair of blue jeans and tennis shoes that appellant said were his. They found a glove in appellant's storage shed which appeared to have blood on it as well. Police found a ring, which appellant said belonged to Helen Frost, in a chest of drawers in appellant's bedroom. Appellant told police that Helen Frost worked for him and that sometimes he and Helen worked out of his house.

On October 11, 1999, police interviewed appellant at which time he told them that he had a red 1993 Chevrolet pickup truck, Texas license plate JU7920, and that he was currently driving that vehicle. Appellant told police that he had talked to Helen Frost on October 5, 1999, at which time he had told her to come to his house on October 6, 1999 to pick up some work. Appellant told police that Helen never showed up. He told police that he could recall his activities for every day of the last week except for the morning of October 6, 1999.

5

Appellant told police he enjoyed "gasping sex," by which he meant rough sex in which he strangled his partner during sexual intercourse until she either passed out or reached orgasm. Appellant acknowledged to the police that it was possible to kill a partner that way. Police observed appellant had a bruise and a long scratch on his left thigh, a scratch on the back of his neck, a scratch on his left forearm, and a scratch and a bruise on his left shin.

Sean Hackett informed police that Helen Frost told him that appellant had made romantic advances toward her and had given her alcoholic beverages at work. Helen Frost told Sean Hackett that she had resisted those advances and she described appellant as "creepy." Amanda Garrett, Helen Frost's roommate, confirmed this information for the police.

Police obtained appellant's cellular telephone records and found that on October 6, 1999, appellant placed six calls between 8:09 a.m. and 8:38 a.m. After that time no calls were placed until 2:27 p.m., a six-hour gap. Police also found that appellant was on felony deferred adjudication probation out of the 331st District Court of Travis County, Texas, for indecency with a child by exposure.

We cannot agree with appellant that the affidavit is deficient in that it does not explain why the affiant believed appellant may have kidnapped Helen Frost or why the affiant believed evidence might be found in appellant's pickup truck. The magistrate could reasonably find from the affidavit a reasonable and logical inference of a nexus between appellant and Helen Frost's disappearance. By October 11, 1999, when the magistrate issued the search warrant, Helen Frost had been missing for five to six days. The facts stated in the affidavit gave the magistrate more than mere suspicion to believe that Helen Frost had been the victim of foul play by appellant. Helen

Frost's car, purse, identification, and ring had all been located and were not in her possession. Appellant was in possession of her ring. Appellant had scratches and bruises on him, and what appeared to be blood on his jeans, shoes, and a glove. On October 6, 1999, Helen Frost had departed her home to go to appellant's house to pick up some work. Appellant's contentions that she never showed up and that he could not remember what he did that morning, despite the fact that he could remember everything else he did that week, were not credible.

The magistrate could reasonably infer that appellant was lying when he told police these things. The four corners of the affidavit told a set of facts and events which gave rise to an inference that appellant told Helen Frost to come to his home under the guise of picking up work so that he could engage in the violent sexual activity he liked to practice which he called "choking sex" and which could kill a woman upon whom it was inflicted. His sexual attraction to Helen Frost was not reciprocated. The magistrate had good reason to believe that Helen Frost would not submit to appellant's sexual advances willingly and that appellant would have to use force. The magistrate had good reason to believe that appellant did in fact use force against Helen Frost. The length of time she had been missing, the fact that her roommate, friends, and family had not heard from her, that she had never gone so long without contacting her parents, together with her car and purse being located in a grocery store parking lot late at night, after business hours, with Helen Frost nowhere to be found, the car keys being missing, her ring being found in appellant's bedroom chest of drawers, the blood being observed on appellant's glove, blue jeans, tennis shoes, and the scratches and bruises observed by police on appellant, when all viewed together, indicated that foul play had been inflicted upon her by appellant and that she was either dead or being held captive by appellant.

7

Police had searched appellant's home and storage shed and not found Helen Frost or her body. It was reasonable for the magistrate to believe that appellant had transported Helen Frost from his home in his truck in order to forcibly impose his sexual desires upon her and that evidence of an abduction of and violence against Helen Frost, perpetrated by appellant, might reasonably be found in the truck.

The articles for which the affiant asked the magistrate to authorize a search were all items which one reasonably might expect police to search for in a case of a missing woman who was believed to be the victim of an abduction and violence. Police asked to search for the body of Helen Frost or any part thereof. They asked to search for trace evidence commonly deposited by the human body, such as hair, blood, bodily fluids, and prints. They asked to search for ligatures, restraints, sexual devices, and condoms. They also asked to search for female clothing, eyeglasses, hair clips, and jewelry. The police limited their request to items dealing with (1) the finding of a human female person, Helen Frost, parts of that person, trace evidence of that person, or her clothing or personal accessories, and (2) evidence of restraints, ligatures, sexual devices, and condoms, the propriety of the search for which was supported by appellant's own statements to police about his sexual predilections as well as what the police learned from Helen Frost's friends about appellant's sexual attraction to Helen Frost and the fact that Helen Frost did not reciprocate that interest.

Only the probability, and not a prima facie showing of criminal activity, is the standard of probable cause. *Spinelli v. United States*, 393 U.S. 410, 419 (1969); *Winkles*, 634 S.W.2d 289, 297; *Lopez*, 535 S.W.2d at 647. The magistrate need not be provided with the very evidence that the execution of the warrant may indeed reveal. *Winkles*, 634 S.W.2d at 297.

8

Likewise, the affiant is not shouldered with the identical burden that is necessary at trial to sustain a conviction. *Id.* The validity of a search warrant does not depend on establishing guilt beyond a reasonable doubt or by preponderance of the evidence. *United States v. Harris*, 403 U.S. 573, 584 (1971); *Winkles*, 634 S.W.2d at 297-298. The affidavit for search warrant in the instant case supported, with facts and inferences therefrom sufficient to constitute probable cause, the magistrate's decision to issue the search warrant. Appellant's contention that the affidavit for search warrant was insufficient to show probable cause to search is without merit.

## Alternative Holdings

### A

Furthermore, the search of appellant's vehicle is valid pursuant to the automobile exception to the warrant requirement. Under the automobile exception, an officer may conduct a warrantless search of a motor vehicle if the officer has probable cause to believe the vehicle contains evidence of a crime. *Powell v. State*, 898 S.W.2d 821, 827 (Tex. Crim. App. 1994) (citing *Amos v. State*, 819 S.W.2d 156, 161 (Tex. Crim. App. 1991)). The exception extends to all types of motor vehicles. *Id.*

Although exigent circumstances did exist in this case, as appellant was at liberty to move the vehicle at any time and at liberty to remove evidence or cleanse the vehicle of evidence at any time, it would not be necessary for exigent circumstances to be present. The Court of Criminal Appeals has expressly overruled all cases requiring exigent circumstances as a prerequisite to a warrantless search of an automobile so long as probable cause exists to believe the automobile contains evidence of a crime. *State v. Guzman*, 959 S.W.2d 631, 634 (Tex. Crim. App. 1998)

9

(following *United States v. Johns*, 469 U.S. 478, 105 S. Ct. 881, 83 L. Ed. 2d 890 (1985); *Michigan v. Thomas*, 458 U.S. 259, 102 S. Ct. 3079, 73 L. Ed. 2d 750 (1982); *Florida v. Meyers*, 466 U.S. 380, 104 U.S. 380, 104 S. Ct. 1852, 80 L. Ed. 2d 381 (1984); *Texas .v White*, 423 U.S. 67, 96 S. Ct. 304, 46 L. Ed. 2d 209 (1975); *Chambers v. Maroney*, 399 U.S. 42, 90 S. Ct. 1975, 26 L. Ed. 2d 419 (1970)).

In determining probable cause for warrantless searches and seizures, a reviewing court should consider the totality of the circumstances. *Gates*, 462 U.S. at 230, *Angulo v. State*, 727 S.W.2d 276, 278 (Tex. Crim. App. 1987). The sum of the information known to the cooperating officers at the time of a search by any of the officers involved is to be considered in determining whether there was sufficient probable cause. *Fearance v. State*, 771 S.W.2d 486, 509 (Tex. Crim. App. 1988); *Woodward v. State*, 668 S.W.2d 337, 344 (Tex. Crim. App. 1982).

The facts available to the police provided them with more than an inarticulable hunch or mere suspicion. The totality of the information gave the police probable cause to believe that evidence that appellant committed kidnapping and violence against Helen Frost was probable to be found in his truck.

**B**

Finally, even if the search of the truck was not supported by probable cause or by a valid search warrant, the admission of trace evidence found in appellant's truck was tested and found to contain the victim's D.N.A. We have determined beyond a reasonable doubt that such evidence in view of all of the evidence did not contribute to appellant's conviction or punishment under Texas Rule of Appellate Procedure 44.2(a). *See* Tex. R. App. P. 44.2(a). The testimony of Sean Hackett

10

and appellant's statements to the police demonstrated that Helen Frost left her home to go to appellant's house on October 6, 1999, at appellant's request, supposedly to pick up some work. Appellant denied to police that Helen Frost ever arrived. Notwithstanding appellant's story, appellant's neighbors saw Helen Frost at appellant's home on that day, saw her upset and crying, observed appellant, angry and with raised voice, order her into his truck, heard Helen Frost say "no," heard appellant continue to order her into his truck, and observed appellant drive away with Helen in his truck, leaving her own car behind at his home. That was the last time Helen Frost was seen alive. None of the testimony as to the finding of the nude body of Helen Frost on October 11, 1999, in a cultivated field, the clothes missing, the body in a posture that suggested sexual assault, of the fact that Helen Frost had been dead from four to eight days, and of the medical examiner's ruling that her death was caused by homicidal violence of an undetermined type, was derived directly or indirectly from the trace evidence found in appellant's truck.

Appellant's point of error is overruled; the judgment of the trial court is affirmed.

_____

Carl E. F. Dally, Justice

Before Justices Kidd, B. A. Smith and Dally[*]

Affirmed

Filed:  June 10, 2004

Do Not Publish

[*]   Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).

11