Benny Gomez LOPEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 51237.

Court of Criminal Appeals of Texas.

April 20, 1976.

Dennis W. McGill, Lubbock, for appellant.

Alton R. Griffin, Dist. Atty., and Charles Bailey, Asst. Dist. Atty., Lubbock, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for murder where the jury assessed the punishment at life imprisonment.

The record reflects that on the night of January 13, 1974, the appellant and Ricky and Jesse Rivera were at the La Fiesta Dance Hall in Lubbock. Appellant was placed there by the testimony of his ex-wife and a security guard, Carlos Perez. Jesse Galvan testified that the 26 year old deceased, Arthur Luna, Jr., was also there that night and was looking for a ride when the dance ended about 12:30 a. m.

The body of the deceased was discovered on January 16, 1974, in a field near a school by a Lubbock school district employee. When the police arrived, they found the badly beaten body of the deceased with his underwear pulled down below his buttocks. Trousers were found in a tree nearby.

Dr. John Ray testified the deceased was killed by blows with some instrument to the head and that the left side of the skull had been fractured. While the doctor could not be positive about the fact of a sexual assault, he did testify he discovered acid phosphate, an enzyme produced by the prostate gland of a male, and blood in the rectal area of the deceased.

Appellant was arrested for the murder of Luna after he was found in a house at 1803 Bates Street in Lubbock where the officer executed a search warrant on January 27, 1974. The deceased's shoes, bloody clothing and other items were discovered there.

A number of warnings were administered to the appellant both by magistrates and peace officers. On January 28, 1974, in midafternoon, he gave a written confession, admitting killing Luna. Subsequently, he took officers where he had buried a car jack used in the assault and pointed out the area

and the officers were able to uncover the buried jack. Later that evening he gave another written confession in more detail acknowledging that he had not told the "whole truth" when he gave the earlier written confession.

This last confession reflects that the appellant and Rivera brothers had given the deceased Luna a ride from the dance, and that an argument ensued when money for gas was requested of Luna and he said he had only enough for cigarettes. They drove to a field and pulled Luna from the car and all three began to hit Luna with their fists and a car jack. Appellant acknowledged he pulled "Luna's pants down and laid on him for a while and then got off." Luna was dragged into the bushes and the jack was buried near the edge of the field.

First, we shall consider appellant's contention that the court erred in permitting the introduction of State's Exhibits 18 (deceased's shoes) and 20 (jack head) for the reason they were obtained by an illegal search and seizure at the 1803 Bates Street address because the search warrant was predicated upon insufficient affidavit.

The affidavit reads as follows:

"AFFIDAVIT IN SUPPORT OF ANY SHERIFF OR PEACE OFFICER OF LUBBOCK COUNTY, TEXAS, For a Search Warrant to search a white frame triplex apartment, said apartment being located on the extreme east end of the triplex apartment unit with the front door facing south and located at 1803 Bates Avenue, Lubbock, Lubbock County, Texas, being occupied and controlled by Rickey Riveria, a Mexican male, approximately 19 years of age, and person or persons whose names and descriptions are unknown, and a Chevelle automobile bearing the license number CLJ 298 and a Chevrolet automobile bearing the license number CDF 886, and all other automobiles and outbuildings located on or appurtenant to the premises.

"I, Mike Cooper, of the Lubbock Police Department, have reason to believe and do believe that certain items, to-wit: 4 bumper jacks, are presently located at a white frame triplex apartment, said apartment being located on the extreme east end of the triplex apartment unit with the front door facing south, located at 1803 Bates Avenue, Lubbock, Lubbock County, Texas, being occupied and controlled by Rickey Riveria, a Mexican male, approximately 19 years of age and person or persons whose names and descriptions are unknown. Affiant has reason to believe and does believe that the above described items are items that were used to beat to death Arthur Luna, Jr., on or about January 16th, 1974, and it is necessary to search the above described premises in order to seize any evidence in the murder, to-wit: tire tools, bumper jacks, articles of clothing worn by the victim, tires, and bloodstains.

"I, Mike Cooper, believe the above statement is true for the following reasons: within the past twenty-four (24) hours the Affiant has received information from an informant that the morning of January 16th, 1974, the informant personally observed four Mexican males remove four bumper jacks from a blue Chevrolet automobile. Said bumper jacks were covered with blood and the clothing of the four Mexican males were covered with blood. Informant further observed bloodstains on the tires of the automobile. I, Mike Cooper, further believe that the above statement is true for the following reasons: the deceased, Arthur Luna, Jr., was beaten to death by an instrument or instruments which make marks resembling a bumper jacks, and affiant personally observed these marks on the body of the deceased. Also, the informant lives across the street from the apartment described in this affidavit and the information he has given is through his personal observations. Furthermore the informant is gainfully employed. The informant's name is Jimmy Huerta."

It is appellant's contention that the affidavit does not meet the requirements of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), wherein the court states that "the magistrate must be

informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were and some of the underlying circumstances from which the officer concluded that the informant . . . was 'credible' or his information 'reliable'."

Appellant asserts that the affidavit fails to reflect sufficient underlying circumstances from which the informant concluded that the property was where he claimed it to be. Appellant argues that while the informant supposedly observed four Mexican males remove bumper jacks and clothing covered with blood from a blue Chevrolet automobile he did not state that the persons he saw were on the property described (1803 Bates) or went into the apartment or what they did with the jacks and clothing; that while the informant lived across the street from the apartment in question, there is no showing from the facts of the affidavit that the informant was at home at the time of his observations.

It is true that in determining the sufficiency of a search warrant affidavit to reflect probable cause this court is bound by the four corners thereof. Article I, Sec. 9, Tex.Const.; Article 18.01, Vernon's Ann.C. C.P.; *Abercrombie v. State,* 528 S.W.2d 578 (Tex.Cr.App.1975); *Carvajal v. State,* 529 S.W.2d 517 (Tex.Cr.App.1975). However, in interpreting affidavits for search warrants courts must do so in a common sense and realistic manner. *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *Carvajal v. State,* supra; *Powell v. State,* 505 S.W.2d 585 (Tex.Cr.App.1974). Further, a magistrate, in assessing probable cause, may draw inferences from the facts, *Johnson v. United States,* 333 U.S. 10, 13–14, 68 S.Ct. 367, 92 L.Ed. 436 (1948), and probable cause exists when the facts and circumstances shown in the affidavit would warrant a man of reasonable caution in the belief that the items to be seized were in the stated place, *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

The test is whether the facts submitted to the magistrate were sufficient to justify a conclusion by him that the property which is the object of the search is probably on the person or premises to be searched at the time the warrant is issued. See *Durham v. United States,* 403 F.2d 190, 193 (9th Cir. 1968). And if "in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States v. Ventresca,* supra, 380 U.S. at p. 109, 85 S.Ct. at p. 746.

In *United States v. Mulligan,* 488 F.2d 732 (9th Cir. 1973), the court said:

"Although there was no direct evidence that any evidence from the burglary was inside Dinsio's residence, there was sufficient evidence from which the magistrate could use his common sense to infer that the loot and tools, if not buried, were probably in the house. *United States v. Ventresca,* supra, 380 U.S. at 108, 85 S.Ct. 741. . . .

"Because 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause,' *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), we conclude that the affidavit contained a sufficient constitutional basis for a finding of probable cause."

In *United States v. Lucarz,* 430 F.2d 1051 (9th Cir. 1970), the search warrant affidavit, among other things, stated a male postal employee (Lucarz) had received custody of a mail pouch and later reported it to be cut and the mail inside missing and that he had been absent from the office for 35 minutes on the day in question. The court concluded the affidavit demonstrated theft of matters one would expect to be hidden in a residence. It reflected that appellant had the time to take the materials to his home but not to seek a more unusual hiding place. The court then said:

"The situation here does not differ markedly from other cases wherein this court and others, albeit usually without discussion, have upheld searches although

the nexus between the items to be seized and the place to be searched rested not on direct observation, as in the normal search-and-seizure case, but on the type of crime, the nature of the missing items, the extent of the suspect's opportunity for concealment, and normal inferences as to where a criminal would be likely to hide stolen property." (Authorities cited not listed.)

■ As appellant points out, the affidavit in the instant case does not contain anyone's observation of the property at 1803 Bates; that missing information, however, is not fatal to a determination that probable cause existed to search the residence. See and cf. *United States v. Rahn*, 511 F.2d 290, 293 (10th Cir. 1975). The affidavit, as we have determined, gave probable cause to search the premises. The affidavit reflects that the information came from personal observations of an informant, that the informant lived across the street from 1803 Bates, which apartment was described in some detail by the affidavit. Since the items in question were seen taken from an automobile by a named informer who lived across the street, we think it is a reasonable inference that items were at the address named in the affidavit.

Appellant asserts that the second prong of the *Aguilar* test was not met because the affidavit failed to reflect that the informant was "credible" or his information "reliable."

In *Frazier v. State*, 480 S.W.2d 375 (Tex. Cr.App.1972), it was held that the requirements of *Aguilar* are met when the hearsay information in an affidavit is derived from *named* persons who supply detailed information suggesting direct knowledge of the information which they have given. See also *United States v. Bell*, 457 F.2d 1231 (5th Cir. 1972). See also *Woods v. State*, 533 S.W.2d 16 (Tex.Cr.App.1976).

■ Here, the affidavit named the informant as Jimmy Huerta, and stated he lived across the street from the address in question and stated he was gainfully employed and related the detailed information concerning the bloody items seen taken from the car in question. It is further obvious that many of the other facts stated by the affidavit were obtained from the informant rather than by personal surveillance by the affiant. Appellant's contention is without merit.

Appellant also urges that the lapse of time between the informant's observations on January 16, 1974, and the issuance of the search warrant on January 27, 1974, will not justify the finding of probable cause at the time the warrant was issued even though the officer-affiant only received the information from the informer within twenty-four hours before the warrant was issued.

■ It is true that the facts attested to in the search warrant affidavit must be so closely related to the time of the issuance of the warrant as to justify a finding of probable cause at the time by the magistrate. *Heredia v. State*, 468 S.W.2d 833 (Tex.Cr. App.1971), and cases there cited.

In *Moore v. State*, 456 S.W.2d 114 (Tex. Cr.App.1970), officers delayed from November 29 to December 30, 1967, in obtaining a warrant although they had probable cause on November 29th. The warrant was upheld. While the affidavit did not reflect, the trial record showed the officers had also received information that the defendant was about to obtain a large quantity of marihuana and they waited until they secured the confirmation of such report before proceeding. After confirmation, they proceeded within a few hours to obtain the warrant on December 30th. See also *Smith v. State*, 114 Tex.Cr.R. 315, 23 S.W.2d 387 (1930).

■ In the instant case the officer moved within twenty-four hours after receiving information to secure the warrant. We hold that the 11 day lapse between the observations by the informant and the issuance of the search warrant was not fatal. See *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); *United States v. Golay*, 502 F.2d 182, 187, footnote # 10 (8th Cir. 1974).

Next, appellant contends that the court erred in admitting his two confessions for the reason that the statements were (1) obtained in conjunction with an illegal search and seizure and were thus fruits of the poisonous tree, (2) there was no showing he knew and understood his constitutional rights and voluntarily waived such rights before making such statements.

The record is replete with numerous warnings given to the appellant by both the officers and two magistrates prior to the giving of both confessions. These warnings were in compliance with *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and Article 38.22, Vernon's Ann.C.C.P., and Article 15.17, Vernon's Ann.C.C.P. At the separate hearing on voluntariness,[1] the appellant acknowledged he had been warned of his rights by both magistrates and understood what had been explained to him, that he was 19 years old at the time, had gone to the 9th grade in school and could read and write the English language. While on direct examination he stated he didn't understand the meaning of the word "prior" and didn't understand about the appointment of counsel if he was unable to secure one of his own choice, he contradicted this on cross-examination.

We conclude the evidence amply supports the court's findings that appellant had been properly warned and that he had knowingly and intelligently waived his rights. *Thompson v. State*, 510 S.W.2d 949 (Tex.Cr.App.1974); *Brown v. State*, 508 S.W.2d 91 (Tex.Cr.App.1974); *Taylor v. State*, 498 S.W.2d 346 (Tex.Cr.App.1973); *DeLeon v. State*, 500 S.W.2d 862 (Tex.Cr. App.1973).

Further, what we have said about the legality of the search and seizure disposes of appellant's other contention concerning the admissibility of the confessions. See and cf. *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

Appellant also complains of the court's charge instructing the jury that "a person commits the offense of murder if he intentionally or knowingly causes the death of an individual without justification" when the indictment only charged that he "did intentionally cause the death of Arthur Luna, Jr. . . . ." Appellant's timely objection to the charge was overruled.

In examining the charge we find that in paragraph "1" thereof the court included the complained of instruction when he was abstractly charging on the law of murder. See V.T.C.A. Penal Code, Sec. 19.02. The abstract instruction was a correct statement of the law. When the court however applied the law to the facts in the charge, the court only authorized a conviction if the act was "intentionally" done as charged in the indictment.

The jury's verdict at the guilt stage of the trial reflected that the appellant was guilty of murder "as charged in the indictment." Appellant's contention is without merit.

Appellant next complains of the court's instruction on the issue of the voluntariness of the confession, claiming the instruction was cast in terms making it a negative proposition rather than charging in affirmative acts. The appellant timely objected. We do not view the charge as being erroneous, but if it was, no reversible error is presented for the error, if any, was not calculated to injure appellant's rights nor was he deprived of a fair and impartial trial. See Article 36.19, Vernon's Ann.C. C.P. It is further observed that the issue of voluntariness was not raised by the evidence offered before the jury. Thus, appellant was not even entitled to have the issue submitted. *Cogburn v. State*, 458 S.W.2d 932 (Tex.Cr.App.1970). In submitting the issue, the court placed the appellant in a more favorable position than he was entitled. The contention is overruled.

1. See *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); Article 38.22, Vernon's Ann.C.C.P.

**650**

In two grounds of error appellant complains the trial court erred in failing to grant his third motion for continuance. The motion was not sworn to by the appellant as required by Article 29.08, Vernon's Ann.C.C.P. No error is presented. *Zanders v. State*, 515 S.W.2d 907 (Tex.Cr.App.1974); *Gonzales v. State*, 470 S.W.2d 700 (Tex.Cr.App.1971); *Ikner v. State*, 468 S.W.2d 809 (Tex.Cr.App.1971).[2]

Next appellant complains of the overruling of his motion in limine that no mention be made of the deceased's mental condition as it was not relevant. The motion was overruled. It has long been established that the ages, physical and mental conditions of the accused and the deceased are admissible when relevant. *Sanchez v. State*, 69 Tex.Cr.R. 1134, 153 S.W. 1133 (1913); *Hickey v. State*, 99 Tex.Cr.R. 529, 270 S.W. 552 (1925).

Further, when the deceased's father testified that the deceased had the mind of a child, there was no objection. It is fundamental that a timely objection to inadmissible evidence be urged at the first opportunity. *Guzman v. State*, 521 S.W.2d 267 (Tex.Cr.App.1974).

Still further, appellant presents nothing for review when he relies solely upon the court's action in overruling his motion in limine. *Norman v. State*, 523 S.W.2d 669 (Tex.Cr.App.1975); *Duran v. State*, 505 S.W.2d 863 (Tex.Cr.App.1974); *Hood v. State*, 490 S.W.2d 549 (Tex.Cr.App.1973); *Ex parte Gill*, 509 S.W.2d 357 (Tex.Cr.App.1974).

Appellant complains of the introduction of State's Exhibit 17 (underwear found on the deceased) for the reason that there was not demonstrated a chain of custody.

Lubbock police officer Lucas stated he arrived at the location where the deceased was found fifteen minutes before the ambulance arrived. He followed the ambulance to the hospital and was present when the underwear was removed, took it and turned it over to Officer Cooper. At trial Lucas identified the underwear as being in the same condition as he had found it initially on the deceased except for two holes. Cooper stated he received the underwear and identified it from his marks on it, stated he took it to Dr. Ray and Ray took a sample piece from the garment (the two holes). Cooper then took the exhibit to the Department of Public Safety and stated the underwear at trial was in the same condition as at that time.

It appears to be appellant's argument that the chain of custody was broken when the underwear was not in police custody during the ambulance ride to the hospital. There does not appear to be any evidence that the underwear had been taken from the body or tampered with in any way. Appellant's objection went to the weight rather than the admissibility. See *DeLeon v. State*, 505 S.W.2d 288 (Tex.Cr.App.1974); *Noah v. State*, 495 S.W.2d 260 (Tex.Cr.App.1973); *Kilburn v. State*, 490 S.W.2d 551 (Tex.Cr.App.1973). His contention is without merit.

Appellant further urges the court erred in admitting the bumper jack found in the field for the reason it solved no material issue.

The record reflects that appellant in his first written statement stated the deceased had been struck with a jack and that the jack had been thrown into a field. Later, in the company of officers, appellant went to the field and pointed out the area where the officers found a jack with human blood on it.

It is well settled that the weapons or instruments with which an offense has been committed or alleged to have been committed are admissible. *Knox v. State*,

---

**2.** It appears the court at a pre-trial hearing entered orders on some 19 motions and instructed the prosecutor to prepare the written orders. The third motion for continuance was directed to the failure of the prosecutor to prepare such orders. After denial of the motions, only a portion of the orders were handed to appellant. It appears the court entered orally his order and ruling on each motion and the prosecutor was only to reduce them to writing and submit them to the defense for approval as a form only.

487 S.W.2d 322 (Tex.Cr.App.1972). We cannot agree that the court erred in admitting the jack in question.

If it be appellant's argument that the same was not admissible since it was discovered as a result of an oral confession, we observe that an oral confession leading to the instrument with which an accused states the offense was committed is admissible under Article 38.22(a)(1)(3), Vernon's Ann.C.C.P. While Article 38.22, supra, does not require any warnings for oral confessions, *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), is applicable to both oral and written confessions. *Lee v. State*, 428 S.W.2d 328 (Tex.Cr.App.1968); *Walker v. State*, 470 S.W.2d 669 (Tex.Cr.App.1971). In the instant case the record reflects that prior to the oral confession the appellant was properly warned of his rights as required by *Miranda* by two magistrates and an officer, and the evidence is sufficient to show he waived his rights. Further, we find no objection offered to the introduction of the oral confession.

Appellant's contention is without merit.

Lastly, appellant complains of the admission, over objection, of eight photographs, six of the deceased at the scene where the body was discovered, one of the deceased without clothing lying on a table after removal from the scene of the crime, and one of a pair of trousers in a tree.

There was testimony of the condition of the deceased's body at the scene. It is well established that since a verbal description of the body and the scene was admissible it is not error to admit into evidence photographs thereof. *Sloan v. State*, 515 S.W.2d 913 (Tex.Cr.App.1974); *Self v. State*, 513 S.W.2d 832 (Tex.Cr.App.1974); *Winegarner v. State*, 505 S.W.2d 303 (Tex.Cr.App.1974); *Martin v. State*, 475 S.W.2d 265 (Tex.Cr.App.1972). The same rule would apply to the picture of the trousers in the tree, as well as the photograph of the nude body of the deceased lying on a table. It is observed that this latter photograph was not a post-autopsy photograph. Cf.

*Terry v. State*, 491 S.W.2d 161, 163 (Tex.Cr.App.1973).

The contention is overruled.

The judgment is affirmed.