**Opinion filed February 28, 2020**



### In The

# Eleventh Court of Appeals

_____

## No. 11-18-00060-CR

_____

## GERONIMO MUNGUIA, III, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 161st District Court**
**Ector County, Texas**
**Trial Court Cause No. B-17-0272-CR**

## MEMORANDUM OPINION

Appellant, Geronimo Munguia, III, entered a guilty plea to the offense of possession of a controlled substance, psilocin, four grams or more but less than 400 grams. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.116 (West 2017). In accordance with the terms of his plea bargain agreement, Appellant's punishment was assessed at confinement for a term of seven years and a fine of $2,000. The trial court suspended the imposition of the sentence and placed Appellant on community

supervision for a term of seven years. Before he entered his plea, Appellant filed a motion to suppress that the trial court denied. Accordingly, Appellant preserved his right to appeal the suppression issue. On appeal, Appellant argues that the trial court erred when it denied his motion to suppress. We affirm.

*Background Facts*

While working for the Odessa Police Department, Officer Zachary Kraft received an anonymous tip that there was a marihuana grow house in the area. After corroborating the tip, Officer Kraft applied for a warrant to search the residence. The warrant affidavit alleged that there was probable cause to issue a search warrant based on the following:

1. AFFIANT, Zachary Kraft, is a police officer in and for the City of Odessa, Texas. Affiant is currently assigned to the Criminal Investigation Division, Narcotics/Vice Unit as a narcotics detective, whose primary function is the investigation of narcotic and vice related offenses. Affiant has been a certified peace officer in the State of Texas for approximately 3 years.

2. Affiant received information from a crime stoppers tip that advised that a Trey Munguia had marijuana grow at 1515 N Muskingum and 1519 N Muskingum. The crime stoppers tip advised that a single wide trailer next to a house that was on the same lot was filled with 20 marijuana plants including the grow lights.

3. I investigated the tip and located 1519 N Muskingum which was an orange two story residence on the same lot as 1515 N Muskingum. I then drove to the alley with my fellow detectives and initiated a trash run. We located a dumpster that was in-between 1515 N Muskingum and 1519 N Muskingum. Detectives initated [sic] a trash run where we took several bags from the dumpster to find and [sic] evidence of marijuana being grown from the target residence. We located a trash bag that contained a piece of mail with the address 1519 N Muskingum and the name Geronimo Munguia on the front. In the same trash bag I located a green leafy substance that I know through my training and experience to be marijuana, the green leafy substance tested positive for marijuana using a morris-kopec marijuana test kit. We also located several stems, planting

2

soil, and a grow light used for growing plants indoors. Pictures were taken of all of the findings.

4. Affiant knows, through training and experience, that narcotics dealers store quantities of narcotics in their residence to avoid detection from law enforcement.

5. Based on the aforementioned facts and circumstances, the Affiant believes that it is highly probable that a search of the said suspected place and premises will yield a quantity of marijuana.

The magistrate issued a search warrant based on the information in the affidavit, and officers searched the residence. The search yielded four ounces of marihuana and a felony amount of psilocybin mushrooms; no marihuana plants were found during the execution of the search warrant. Appellant was arrested and subsequently indicted in relation to the items found during the search.

After he was indicted, Appellant filed a motion to suppress the evidence found in his home. The trial court denied the motion, and Appellant ultimately pleaded guilty to the offense. This appeal followed.

*Issue One: Probable Cause*

In his sole issue, Appellant contends that the search warrant affidavit failed to articulate sufficient facts to support a finding of probable cause. Specifically, Appellant argues that the magistrate could not have found probable cause that the items sought would be on the premises at the time the warrant was issued because the affidavit contained neither a date nor a time that the information was obtained. We disagree.

*Standard of Review*

We review a trial court's denial of a motion to suppress under a bifurcated standard of review. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011). We give almost total deference to the trial court as to the historical facts found; the trial court's application of the law, however, is reviewed de novo. *Id.* Our duty "is

3

simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 214 (1983). The substantial-basis standard of review "does not mean the reviewing court should be a rubber stamp but does mean that the magistrate's decision should carry the day in doubtful or marginal cases, even if the reviewing court might reach a different result upon de novo review." *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010) (quoting W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 11.7(c) at 452 (4th ed. 2004 & Supp. 2009–2010)).

*Applicable Law*

It is well established that "[t]he core of the Fourth Amendment's warrant clause and its Texas equivalent is that a magistrate may not issue a search warrant without first finding 'probable cause' that a particular item will be found in a particular location." *State v. Elrod*, 538 S.W.3d 551, 556–57 (Tex. Crim. App. 2017) (quoting *State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012)). Additionally, the information that supports a finding of probable cause must not be stale: "The facts submitted to the magistrate . . . must be sufficient to justify the conclusion that the property that is the object of the search is probably on the premises to be searched *at the time the warrant issues*." *Crider v. State*, 352 S.W.3d 704, 707 n.6 (Tex. Crim. App. 2011) (quoting *Schmidt v. State*, 659 S.W.2d 420, 421 (Tex. Crim. App. 1983)).

"[P]robable cause exists when the facts and circumstances shown in the affidavit would warrant a man of reasonable caution in the belief that the items to be seized were in the stated place." *Elrod*, 538 S.W.3d at 556 (alteration in original) (quoting *Lopez v. State*, 535 S.W.2d 643, 647 (Tex. Crim. App. 1976)). When we review the legitimacy of a magistrate's probable cause finding—like the magistrate—we are "bound by the four corners of the affidavit." *Id.* Nevertheless, a magistrate may draw inferences from the facts when assessing probable cause. *Id.*

4

Accordingly, "although the magistrate's determination of probable cause must be based on the facts contained within the four corners of the affidavit, the magistrate may use logic and common sense to make inferences based on those facts." *Id.*

To determine whether a substantial basis existed for the magistrate's decision, we are further instructed to avoid analyzing the affidavit in a hyper-technical manner. *Gates*, 462 U.S. at 236; *McLain*, 337 S.W.3d at 271. Instead, "when an appellate court reviews an issuing magistrate's determination, that court should interpret the affidavit in a commonsensical and realistic manner . . . . When in doubt, we defer to all reasonable inferences that the magistrate could have made." *McLain*, 337 S.W.3d at 271; *Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007).

*Staleness*

Concerning the issue of staleness, we review each search warrant affidavit in light of the suspected criminal activity. *Crider*, 352 S.W.3d at 707. To be sure, probable cause evaporates quite rapidly when the item to be seized is alcohol in one's bloodstream. *See id.* at 708. However, "time is a less important consideration when an affidavit recites observations that are consistent with ongoing drug activity at a defendant's residence." *Jones v. State*, 364 S.W.3d 854, 860 (Tex. Crim. App. 2012). Accordingly, "evidence of ongoing criminal activity will generally defeat a claim of staleness." *State v. Cuong Phu Le*, 463 S.W.3d 872, 880 (Tex. Crim. App. 2015) (quoting *Jones*, 364 S.W.3d at 861).

In *Crider*, the Court of Criminal Appeals identified four factors bearing on the issue of staleness:

(1) the type of crime—short-term intoxication versus long-term criminal enterprise or conspiracy;

(2) the suspect—"nomadic" traveler, "entrenched" resident, or established ongoing businessman;

(3) the item to be seized—"perishable and easily transferred" (evanescent alcohol, a single marijuana cigarette) or of "enduring

5

utility to its holder" (a bank vault filled with deeds, a "meth lab," or a graveyard corpse); and

(4) the place to be searched—a "mere criminal forum of convenience or secure operational base."

*Crider*, 352 S.W.3d at 708 (quoting *United States v. Hython*, 443 F.3d 480, 485 (6th Cir. 2006)). In this case, all four of these factors weigh in favor of the determination that the information in the search warrant affidavit was not stale.

Officer Kraft's affidavit sought a search warrant for a residential property believed to be housing a marihuana-growing operation. According to the affidavit, the residence was believed to house twenty marihuana plants, potting soil, and a grow light, based on both a tip from an unknown informant and the investigative efforts of law enforcement. Through said investigative efforts, law enforcement discovered a piece of mail addressed to Appellant at the suspected property.

This was not a single criminal offense. Unlike a lone marihuana cigarette, twenty marihuana plants cannot be consumed in a mere instant. By contrast, the utility of marihuana plants endures for as long as they continue to produce marihuana. Moreover, the plants were believed to be concealed inside a residence. Specifically, it was believed that it was the residence of an individual with an expressed intent to remain at that location long-term, evidenced by the mail addressed to him at the suspected address. Accordingly, this marihuana-growing operation is better characterized as a (1) long-term criminal enterprise, (2) by an entrenched resident, (3) that is of enduring utility, and (4) located at a secure operational base.

In addition to the evidence that this was an ongoing criminal activity, Officer Kraft's affidavit also contained statements relating to his present-tense belief that there was illegal activity taking place at the moment the affidavit was submitted to the magistrate. The affidavit stated that the suspected location "*is* in charge of

and controlled by" Appellant (emphasis added). It continued, stating that "it *is* the belief of affiant, and affiant hereby charges and accuses, that said suspected party *has* possession of and *is* concealing" multiple illicit items (emphasis added). At the end of the probable cause portion, the affidavit further stated that "the Affiant *believes* that it *is* highly probable that a search of the said suspected place and premises *will* yield a quantity of marijuana" (emphasis added). In conjunction with the evidence of ongoing criminal activity, the present-tense language utilized in the affidavit would allow a magistrate to reasonably conclude there was probable cause to believe that the marihuana-growing operation was currently located at the suspected place.

The affidavit further mentioned that Officer Kraft "has been" a police officer for three years and was "currently assigned to the Criminal Investigation Division, Narcotics/Vice Unit as a narcotics detective, whose primary function is the investigation of narcotic and vice related offenses." The implication of the language used is that any evidence of criminal activity was obtained, at most, three years prior. Likely, however, evidence related to narcotics would have been obtained more recently, as the language in the affidavit suggests that Officer Kraft had been a police officer for longer than he had been investigating narcotics.

Based on the information found within the four corners of Officer Kraft's affidavit, we hold that the magistrate had a substantial basis to conclude, under the totality of the circumstances, that there was a fair probability that a search would uncover evidence of criminal wrongdoing at the location outlined in the search warrant. Nevertheless, our holding should not be interpreted as a tacit endorsement of Officer Kraft's affidavit: "The better practice is for affiants to specify the times of critical events so that magistrates have precise information from which to determine probable cause. On different facts, a lack of specific information about

times might cause an affidavit to be insufficient." *Crider*, 352 S.W.3d at 713 n.13 (Womack, J., dissenting).

*This Court's Ruling*

We affirm the judgment of the trial court.


KEITH STRETCHER

JUSTICE


February 28, 2020

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.